**STATE of Oklahoma, Appellant,**

v.

**Loretta Ann JOHNSON, Appellee.**

**No. S–87–412.**

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1988.

David L. Moss, Dist. Atty., Paul B. Smith, Asst. Dist. Atty., Brent Olsson, Legal Intern, Tulsa, for appellant.

Terry H. Bitting, Tulsa, for appellee.

## OPINION

PARKS, Judge:

The State, under a reserved question of law (22 O.S.1981, § 1053.1), is appealing a decision of the District Court of Tulsa County which dismissed Case No. CRM–86–1454, holding that 21 O.S.1981, § 863 was violative of the Equal Protection Clause of the Fourteenth Amendment as it discriminated against women and failed to meet its stated objectives.

Appellee was charged with Concealing the Stillbirth of a Child. Appellee filed a motion to dismiss, urging that Section 863 unconstitutionally discriminated against unwed mothers and illegitimate children.

After both parties filed briefs, the district court granted appellee's motion, stating that the State's arguments were "archaic and overbroad" and the gender-based discrimination did not achieve the stated objectives. Thereafter, the State gave notice of its intent to appeal. The issue reserved for this Court's determination is whether Section 863 is violative of the federal constitution due to its distinction based on gender.

■ The statute under which appellee was charged reads as follows:

§ 863. Concealing stillbirth or death of child

Every woman who endeavors either by herself or by the aid of others to conceal the stillbirth of an issue of her body, which if born alive would be a [child born out of wedlock], or the death of any such issue under the age of two (2) years, is punishable by imprisonment in the county jail not exceeding one (1) year, or by a fine not exceeding One Thousand Dollars ($1,000.00), or both.

Obviously, the statute distinguishes between women and men, and is therefore subject to scrutiny under the Equal Protection Clause. *Edwards v. State*, 591 P.2d 313, 318 (Okla.Crim.App.1979). Because it is a distinction based on gender, the party seeking to uphold the statute has the burden of showing that the distinction serves important governmental objectives and is substantially related to those objectives. *Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982); *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 1766, 60 L.Ed.2d 297 (1979). Thus, in the present case, the burden rests with the State to show "exceedingly persuasive justification for the classification." *Mississippi University*, 458 U.S. at 724, 102 S.Ct. at 3336. This burden may be met by showing that important governmental objectives are served by the classification and that the classification is substantially related to the achievement of the objectives. *Id.*

■ The State presents several important objectives served by the statute. Initially, the State urges that Section 863 seeks to protect and preserve newborn and infant children by requiring that their deaths be reported in order that medical research and statistics can be achieved with greater accuracy. In particular, we note that a study conducted by the Deputy Commissioner for Personal Health Services, Oklahoma State Department of Health, showed that deaths of infats born out of wedlock outnumber the deaths of other infants almost two to one in Oklahoma. Clearly, these statistics support the State's claim of a need for proper and accurate recordkeeping regarding the deaths of infants born out of wedlock.

The State also urges that Section 863 minimizes public health risks by ensuring that bodies are properly and safely buried. In support of this objective, our attention is directed to the extensive regulation regarding the disposal of corpses and the investigation of deaths which might have been caused by infectious disease. *See* 63 O.S. 1981, §§ 1–319 and 938. The Legislature has determined that the proper burial of corpses furthers the substantial objective of public health and safety and has seen fit to allow the State Board of Health to issue and enforce regulations regarding the burial, removal or transit of corpses. *See* 63 O.S.1981, § 1–319(d). Obviously, the proper disposal of corpses is dependent upon the reporting of deaths.

Lastly, the State submits that Section 863 furthers the enforcement of child abuse statutes. Without the required reporting of the deaths of stillborn or infant children, it would be impossible to investigate the possibility of child abuse. While an older child can interact with people outside the home, thereby creating the reasonable possibility of child abuse being reported by an outside source, such as a teacher, a newborn has little or no interaction with people outside the immediate family. *See* 21 O.S.1981, § 843–848. Hence, it becomes imperative that the death of such an infant be reported by the person or persons with whom the infant interacts, which is generally his immediate family.

We next inquire into the relationship between the objectives of the statute and the classification. Only if the classification is substantially related to the objectives may Section 863 be upheld under the Equal Protection Clause. *See Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 577–578, 42 L.Ed.2d 610 (1975). However, the Equal Protection Clause does not require that both genders be treated equally if they are not similarly situated. For example, in *Schlesinger,* the United States Supreme Court upheld a statute which required that a male Naval officer be discharged after nine (9) years if he failed two times to be selected for a promotion, while it allowed female officers thirteen (13) years of service before discharge under similar circumstances. In determining that the statute was not violative of the Equal Protection Clause, the Supreme Court pointed out that women were given fewer opportunities for promotion, therefore men and women were not similarly situated.

In the more recent case of *Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the Supreme Court again upheld a statute which distinguished between men and women. The questioned statute dealt with statutory rape, which was defined as "unlawful sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." As the language of the statute clearly pointed out, only a male could be charged with statutory rape. In reasoning that the statute was constitutional, the Supreme Court explained as follows:

> Underlying these decisions is the principle that a legislature may not 'make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class.' *Parham v. Hughes,* 441 U.S. 347, 354, 99 S.Ct. 1742 [1747], 60 L.Ed.2d 269 (1979) (plurality opinion of STEWART, J.). But because the Equal Protection Clause does not 'demand that a statute necessarily apply equally to all persons' or require " 'things which are different in fact ...

to be treated in law as though they were the same,' " (citation omitted) this Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.

*Michael M.,* 450 U.S. at 469, 101 S.Ct. at 1204. Following this reasoning, the Supreme Court concluded that the statute was constitutional as the gender-based classification was substantially related to the important governmental objective of preventing teenage pregnancy, thereby protecting "women from sexual intercourse at an age when those consequences are particularly severe." *Michael M.,* 450 U.S. at 472, 101 S.Ct. at 1205.

In the present case, there can be no dispute that men and women are not similarly situated. Under 10 O.S.1981, § 6, the mother of an illegitimate unmarried minor is entitled to custody, services and earnings of the child. She is required to support and maintain the child as well as to provide education within her means. *Plunkett v. Atkins,* 371 P.2d 727 (Okla.1962). The child cannot be adopted without her consent. *Allison v. Bryan,* 26 Okl. 520, 109 P. 934 (1910). The father is not required to support the child in the absence of a contractual, judicial or statutory obligation nor does he have any custodial rights. *See State v. Boston,* 69 Okl.Cr. 307, 102 P.2d 889 (1940).

In *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), the United States Supreme Court again addressed the issue of whether a gender-based classification violated the Equal Protection Clause. *Parham* presented a question regarding the constitutionality of a statute which allowed the mother of a child born out of wedlock to bring an action for wrongful death, but precluded the father from doing so. A plurality of the Court held that "mothers and fathers of illegitimate children are not similarly situated," stating that "unlike the mother of an illegitimate child whose identity will rarely be in doubt, the identity of the father will frequently be unknown." *Id.* at 355, 99

S.Ct. at 1747–48. Thus, the statute was upheld on the basis that the classification substantially furthered the governmental objective of allowing for recovery for wrongful death without facing the problem of proving paternity.

Application of the rationale in these cases leads us to the conclusion that mothers and father of children born out of wedlock are not similarly situated. Insofar as the mother will inevitably be present when her child is stillborn, it is completely logical that the mother is the person charged with the responsibility of reporting the death to the proper authorities. Furthermore, the mother of the child born out of wedlock has the sole responsibility of caring for and maintaining the child. *See* 10 O.S.1981, § 6. In light of the importance of deaths being reported so as to allow for accurate medical research and statistics, to avoid public health risks caused by the improper disposal of corpses, and to further the enforcement of child abuse statutes, the classification is not archaic, as termed by the district court. Rather the classification substantially furthers the objectives of the statute by placing responsibility on the parent with custody of the child as the custodial parent is the most likely to know of the death of the child.

Although appellee argues that the classification allows only for the mother of a child born out of wedlock to be punished for failure to report the death, she fails to recognize 63 O.S.1981, §§ 940 and 953, which require all persons present at the death of any person who is not attended by a physician to report the death to the proper officials. Any individual who willfully fails to comply with Section 940 will be guilty of a misdemeanor and subject to penalty. *See* 63 O.S.1981, § 953. Accordingly, any person who is present at the death of a child is required to report the death if the child was not attended by a physician. She also urges that the objectives of the statute would be better served by including both parents under Section 863. However, our inquiry does not reach the consideration of the statute's wisdom or desirability, but instead focuses only on the relationship between the classification and the objectives of the legislation. *See Cryan v. State*, 583 P.2d 1122, 1124 (Okla. Crim.App.1978).

Accordingly, we hold the district court erred by holding the statute unconstitutional due to the gender-based classification. The State, having appealed the final judgment to this Court under 22 O.S.1981, § 1053.1, is precluded from bringing further action against appellee on this matter. *See State v. Tieman*, 626 P.2d 1360 (Okla. Crim.App.1981). The ruling of the district court is hereby REVERSED.

BRETT, P.J., dissents.

BUSSEY, J., concurs.