Vestor SHULTZ, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–416.

Court of Criminal Appeals of Oklahoma.

May 8, 1991.

Gene Stipe and Clyde Kirk, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Elizabeth J. Bradford, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Vestor Shultz was tried by jury and convicted of Knowingly Possessing Sexual Material Involving the Participation of a Minor Child (Two Counts) in violation of 21 O.S.Supp.1986, § 1021.2 in the District Court of Washita County, Case No. CRF–88–21. The jury recommended as punishment twenty (20) years imprisonment and a twenty-five thousand dollar ($25,000) fine in Count I and twenty (20) years imprisonment and a twenty thousand dollar ($20,000) fine in Count II. The trial court sentenced accordingly, and it is from this judgment and sentence that Appellant appeals. We affirm.

In May 1988, David Merkey and his wife M.M. were moving her personal belongings out of the Cordell home of her step-father, the Appellant. While picking up boxes in the attic, Mr. Merkey discovered a large proof sheet containing numerous small photographs of a nude young girl in various pornographic positions. He showed the photographs to his wife who admitted that she was the subject of the photographs and that the Appellant had taken the photographs when she was approximately ten (10) or twelve (12) years old. It was not until three months later that Mr. Merkey was able to convince his wife to turn the photographs over to the police. Based upon information from M.M., a search warrant for Appellant's home was issued. Executed on August 10, 1988 the search warrant yielded approximately eleven (11) videotapes of a pornographic nature and numerous pornographic magazines.

At trial, M.M. testified that Appellant had taken a "couple hundred" nude photographs of her and her younger sister. She also described a home videotape made by Appellant of herself, her sister and their young friends, wherein a portion of the tape shows the girls in various stages of undressing and the Appellant participating in sexual intercourse with M.M.

The Appellant testified in his own behalf and denied taking the nude photographs of M.M. He also denied ownership of the videotape, stating that it belonged to his wife who had long ago promised to destroy it.

In his first allegation of error, Appellant contends that he was denied effective assistance of counsel by trial counsel's filing of a hastily assembled motion to suppress and by counsel's failure to request a hearing on the motion to suppress to prevent admission of evidence seized during an illegal search.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064.

The record reflects that defense counsel filed a motion to suppress two days before trial. In the motion, counsel moved for suppression of all evidence, tangible or intangible, as it was seized in violation of the constitutional right to be free from

unreasonable searches. Counsel also requested a hearing to determine the admissibility of the evidence pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). (O.R. 72–73) Appellant offers no proof that the motion was in fact prepared hastily. Aside from being brief, we find nothing in the record to support Appellant's claim that it was prepared without full thought and consideration. Assuming arguendo that the motion was filed in a hurry, this Court has previously held that trial counsel's lack of sufficient time to prepare, failure to produce important evidence in support of the defense theory, failure to excuse certain jurors, failure to contact key witnesses and failure to object to certain jury instructions was not sufficient to demonstrate inadequate representation under the *Strickland* standard. *Anderson v. State*, 719 P.2d 1282, 1284 (Okl.Cr.1986). This Court has refused to adopt a *per se* rule requiring a specified period of time or a minimum number of hours in which defense counsel must spend in pre-trial investigation and preparation. *See Fisher v. State*, 736 P.2d 1003, 1012 (Okl.Cr.1987).

■ As proof of trial counsel's alleged ineffectiveness, Appellant challenges the sufficiency of the affidavit supporting the search warrant. We have reviewed it and find it sufficient. The affidavit stated that it was based upon information obtained from David Merkey who discovered the proof sheet, attached to the affidavit as Exhibit A, in the attic of Appellant's house; M.M., Merkey's wife and the subject of the photographs on the proof sheet; a confidential informant, fifteen (15) years old, also the subject of nude photographs taken by Appellant; and an expert in the field of sexual deviate behavior. Reviewing the affidavit under the standard set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that being the validity of an affidavit for a search warrant is to be determined by viewing the affidavit as a whole under the totality of the circumstances, we find the reliability of the infor-

mation received by the affiant sufficient to find that there was probable cause to believe pornographic materials of minors could be found in Appellant's home. *See Langham v. State*, 787 P.2d 1279, 1280 (Okl.Cr.1990).

■ We have also reviewed Appellant's allegations that probable cause was based on stale information, that the search warrant itself lacked specificity in the description of material to be seized, and the existence of a technical imperfection on the return of service. None of these alleged errors would have caused the search warrant to fail. The search and seizure of Appellant's home was constitutional, therefore, trial counsel was not ineffective for failing to argue these specific allegations. The accused assumes the risk of ordinary error in his attorney's assessment of law and facts, *Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir.1978). The fact that another lawyer would have followed a different course during the trial is not grounds for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. *Williams v. Beto*, 354 F.2d 698, 706 (5th Cir.1965). Absent a showing of incompetence, the Appellant is bound by the decisions of his counsel and mistakes in tactic and trial strategy do not provide grounds for subsequent attack. *Davis v. State*, 759 P.2d 1033, 1036 (Okl.Cr. 1988).

Here, trial counsel clearly exercised the skills of a reasonably competent attorney. Merely because he was not successful in his challenge to the search and seizure is no reason to brand him incompetent. Reviewing counsel's overall performance, we cannot say that Appellant was denied effective assistance of counsel. Accordingly, this assignment of error is denied.

■ Appellant alleges in his second assignment of error that he was denied a fair trial by prosecutorial misconduct in the opening statement, questioning of witnesses, and closing argument. Addressing first the opening statement, Appellant directs

this Court's attention to four allegedly improper comments. Of these comments, only two received contemporaneous objections at trial and these objections were overruled. It is well settled that if no objection was made to allegedly improper comments at trial, all but fundamental error review has been waived. *Ashinsky v. State*, 780 P.2d 201, 205 (Okl.Cr.1989); *Gaines v. State*, 568 P.2d 1290, 1293 (Okl. Cr.1977). Reviewing only the comments met with an objection, we do not find that these two comments, which addressed whether the child in the video tape was intoxicated and the length of the video tape, were so improper as to require reversal. Failure to prove all remarks in opening statement in the absence of a showing bad faith and prejudice, is not grounds for reversal. *Kennedy v. State*, 640 P.2d 971, 980 (Okl.Cr.1982); *Ragland v. State*, 404 P.2d 84, 86 (Okl.Cr.1965). After carefully reviewing the record, we find no showing of bad faith or prejudice upon which error can be predicated.

■ Prosecutorial misconduct is also alleged to have occurred in the direct examination of M.M. and Appellant's wife Della, and in the cross-examination of Appellant. Three of four allegedly improper questions were met with contemporaneous objections, which were subsequently overruled. The prosecutor's questions to which Appellant objected concerned M.M.'s knowledge of the type of videotapes Appellant kept in his home. We do not find this inquiry to have prejudiced Appellant in light of the pornographic material admitted into evidence. As Appellant was not injured by this inquiry, reversal is not warranted.

The alleged improper inquiry during the direct examination of Della Shultz concerned the identification of clothing worn by the girls in the videotape. Appellant's objection was overruled. In light of the evidence admitted at trial, we do not find that Appellant was injured by the inquiry which elicited testimony that the clothing worn by the girls belonged to Della. Appellant also objected to an inquiry of Della

concerning visits by the family to a psychiatrist and whether the children confronted Appellant with their allegations. Appellant's objection to the inquiry was sustained. As the witness was prevented from giving any specific answers, we find that any error was cured by the trial court's ruling. *See Shepard v. State*, 756 P.2d 597 (Okl.Cr.1988)(wherein we held no authority requiring reversal in a situation where the objection by the defense was sustained). Similarly, we find that the sustaining of Appellant's objection to the inquiry of Deputy Sheriff Newman concerning the number of videotapes seized which did not involve child pornography cured any error.

■ Appellant also objects to another inquiry of Deputy Newman concerning the contents of the videotape. This objection was properly overruled as it was merely an attempt by the prosecutor to lay a foundation for the introduction into evidence of the videotape.

■ Three specific inquiries during the cross-examination of Appellant are now met with an objection. However, no objection was raised at trial. Therefore, reviewing only for fundamental error, we are reminded that when the defendant takes the stand to testify in his own behalf, he is subject to all the rules applicable to other witnesses on cross-examination. *Coleman v. State*, 600 P.2d 351, 353 (Okl.Cr.1979); *Brown v. State*, 487 P.2d 963, 966 (Okl.Cr. 1971). The inquiries in question concerned issues raised during direct examination. It has long been the rule of this Court that when a defendant opens up a field of inquiry on direct examination, he may not complain of subsequent cross-examination. *Ashinsky*, 780 P.2d at 206.

■ Appellant also alleges error occurred in the prosecutor's showing to the jury of a magazine which was not admitted into evidence. During the cross-examination of Appellant, the prosecutor handed Appellant the magazine and inquired into its discovery in the Appellant's bedroom.

The Appellant's objection and motion for mistrial resulted in a bench conference outside the hearing of the jury. It was revealed that this magazine had been the basis for a third count of possession of obscene material involving minors lodged against the Appellant. This charge was dismissed one month before trial, as the evidence of the appearance of minors in the publication was insufficient. The State subsequently filed a motion to introduce the magazine as evidence of other crimes to show the Appellant's opportunity and common scheme. In ruling on the Appellant's trial objection, the trial court admonished the prosecutor not to show the magazine to the jury before inquiring into Appellant's possession of materials dealing with child pornography. Appellant denied the possession of any such materials and the magazine was not admitted into evidence.

Based upon the above, we do not find that the Appellant was prejudiced by the view of the magazine. The jurors' view was brief and isolated and they were not allowed to examine the magazine. *See White v. State,* 726 P.2d 905, 908 (Okl.Cr. 1986). Therefore, we do not find that the brief exposure to the magazine affected the verdict.

Finally, Appellant directs this Court's attention to twelve (12) allegedly improper comments made during closing argument. None of the comments were met with contemporaneous objections at trial, therefore all but fundamental error review has been waived. Contrary to the Appellant's allegations, the comments were not improper pleas of sympathy for the victim nor intended to arouse the passions and prejudice of the jury. The identified comments fell within the bounds of the wide latitude of discussion allowed in closing argument, and as such, are not grounds for prosecutorial misconduct. *See Carol v. State,* 756 P.2d 614, 617 (Okl.Cr.1988).

Reviewing the record as whole, we find that the Appellant was not denied a fair trial by the conduct of the prosecutor. Therefore, this assignment of error is denied.

■ In his third assignment of error, Appellant contends that the trial court erred in denying his request for a change of venue. The record reflects that Appellant filed a pre-trial motion to quash the jury panel alleging in part that the jury had been subjected to prejudicial and damaging coverage from the news media. (O.R. 37)

It is well established that the granting of a change of venue is within the sound discretion of the trial court and such decision will only be reversed if that discretion is abused. *Robison v. State,* 677 P.2d 1080, 1083 (Okl.Cr.1984); *Hammons v. State,* 560 P.2d 1024, 1029 (Okl.Cr.1977). Title 22 O.S.1981, § 561, provides that a request for change of venue must be accompanied by affidavits of at least three (3) credible persons who reside in said county. Appellant failed to comply with this statutory requirement of providing the affidavits. Instead, he called the editor of the local newspaper to testify at a pre-trial motion hearing. Appellant examined the witness on his views of the case as expressed in his newspaper and the circulation of the paper, submitting five (5) copies of the papers as exhibits. The motion for change of venue was denied, in part, for failure to supply the required affidavits. This was well within the trial court's discretion. *Burton v. State,* 521 P.2d 1382, 1384 (Okl.Cr.1974).

■ There is a rebuttable presumption that the accused can receive a fair trial in the county in which the offense occurred and the burden of persuasion is on the accused, who must show actual exposure to the publicity and resulting prejudice by clear and convincing evidence. Merely showing that pre-trial publicity was adverse to him is not enough. *Bear v. State,* 762 P.2d 950, 953 (Okl.Cr.1988); *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986); *Vaughn v. State,* 697 P.2d 963, 965 (Okl.Cr. 1985). The relevant inquiry on appeal is whether the accused received a fair trial from jurors who could lay aside any personal opinions and base a verdict on the evidence.

 We apply a two-pronged test to determine whether a due process violation occurred as a result of juror knowledge and pre-trial publicity. Prejudice may be presumed where the fact pattern reveals that the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceeding. *Bear*, 762 P.2d at 953. In the present case, we find nothing in the record to indicate a barrage of inflammatory publicity or that the jurors were predisposed to convict. *Harvell v. State*, 742 P.2d 1138 (Okl.Cr. 1987). Nor does the record reflect that the trial was conducted in a circus-type atmosphere wherein the courtroom was given over to the press. *Id.* In the absence of such egregious publicity, we refuse to apply the presumption that a due process violation occurred in this case.

If the facts are not sufficiently egregious to give rise to a presumption of prejudice, the totality of the circumstances will be examined to determine whether the accused received a trial which was fundamentally fair. *Bear*, 762 P.2d at 953. Potential jurors in this case were individually examined on their exposure to and the influence upon them of pre-trial publicity. Of twenty potential jurors examined, only one was excused by the court due to exposure to pre-trial publicity. Appellant notes that he used all five of his peremptory challenges.

However, this does not indicate that Appellant did not receive a fair trial. The jurors who actually served on Appellant's jury all stated that they could set aside any opinion held and impartially judge the case on the evidence presented at trial. We have repeatedly held that an accused is not entitled to a jury who knows nothing about his case. *McBrain v. State*, 764 P.2d 905, 909 (Okl.Cr.1988); *Brecheen v. State*, 732 P.2d 889, 893 (Okl.Cr.1987); *cert. denied* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988); *Wooldridge v. State*, 659 P.2d 943, 946 (Okl.Cr.1983). Rather, he is entitled only to jurors who can fairly and impartially decide his case based on the evidence

presented at trial. The trial court in the instant case provided sufficient safeguards for the jury process, and the need for a change of venue was not established. Accordingly, this assignment of error is denied.

 Appellant contends in his fourth allegation of error that the trial court erred by inquiring into the numerical vote of the jury. The record reflects that during deliberations, the trial court called the jury back into the courtroom, inquired as to the choice of a foreman and stated that it was merely making a general inquiry into the numerical vote of the jury. The judge carefully explained that he wanted only the numerical vote and did not want to know on which count it was based or whether it was in favor of guilt or innocence. The response was as follows:

BY MR. PIERCEY: Unanimous vote on one.

THE COURT: Okay.

BY MR. PIERCEY: And ten yeses—or ten votes—

THE COURT: To two on the other one?

BY MR. PIERCEY: Ten to two on the other one.

THE COURT: The jury will retire to the jury room.

(Tr. 427–428)

 This Court has previously held that a knowledge of the numerical count as to how the jury stands in their deliberations can often help a trial court decide whether further instructions or a mistrial is in order, but that it would be improper to ask the jury toward what verdict they were leaning. *Funkhouser v. State*, 721 P.2d 423, 425 (Okl.Cr.1986), *Dunford v. State*, 614 P.2d 1115, 1118 (Okl.Cr.1980). However, it is not improper for a trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is a reasonable probability of reaching a verdict so long as the judge exercises great caution to say nothing to coerce an agreement or to indicate his feel-

ings in the case. *Gatlin v. State*, 553 P.2d 204, 206 (Okl.Cr.1976); *Reed v. State*, 335 P.2d 932, 936 (Okl.Cr.1959). Reviewing the record in the present case, we find that the trial court did not improperly influence the jury by encouraging them to continue deliberations.

■ In his fifth assignment of error, Appellant alleges error in the trial court's failure to give a jury instruction on the lesser included offense of possession of obscene material in violation of 21 O.S. 1981, § 1024.2. Appellant failed to object to the instructions given or offer written requested instructions as to lesser included offenses. Such a failure results in a waiver where the trial court's instructions accurately state the applicable law. *Russell v. State*, 763 P.2d 1180 (Okl.Cr.1988). Further, Appellant fails to provide any legal authority for his argument that possession of obscene material under Section 1024.2 is a lesser included offense of Section 1021.2. We have consistently held that we will not review allegations of error which are neither supported in the record or by legal authority. *Fuller v. State*, 751 P.2d 766, 768 (Okl.Cr.1988); *Wolfenbarger v. State*, 710 P.2d 114, 116 (Okl.Cr.1985), *cert. denied* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986).

■ Despite Appellant's waiver, we have reviewed the allegation for fundamental error and find no reason to disturb the jury's verdict. When a specific act is defined as a crime along with a term of punishment for the violation of the proscription against the act and the evidence supports a finding of that act, instructions on other offenses are not required. *See Vanscoy v. State*, 734 P.2d 825, 827 (Okl. Cr.1987).

Title 21 O.S.1981, § 1024.2, generally addresses the purchase, procurement or possession of obscene material, while Section 1021.2 specifically prohibits the procurement or possession of obscene or indecent materials containing the depiction of minors. Here, the evidence was uncontradict-

ed that a minor was the subject of the photographs. Therefore, an instruction on the general prohibition against possession of obscene material was not warranted under the evidence. *See Rawlings v. State*, 740 P.2d 153, 160 (Okl.Cr.1987). Accordingly, this assignment of error is denied.

■ In his sixth assignment of error, Appellant alleges that the State failed to maintain a proper chain of custody for State's Exhibit One, the proof sheet, and State's Exhibit Two, the videotape. This Court has long held that the purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed. *Middaugh v. State*, 767 P.2d 432, 436 (Okl.Cr.1988).

The affidavit for the search warrant referred to "a large negative" which contained "pictures of a young child posing in various pornographic positions". The "negative" is also described as that found by David Merkey in the Appellant's attic and identified by M.M. as depicting photographs of herself. This "negative" was attached to the affidavit as Exhibit A. (O.R. 7) Appellant alleges that an improper foundation was laid for the introduction into evidence of this exhibit as a proof sheet was introduced at trial and not a negative. Appellant surmises that sometime between the search and the trial, the State substituted the proof sheet for the negative. This is a specious argument not supported by the record. State's Exhibit 1 is not what is commonly known as a "negative" of a photograph, but rather a "proof sheet", commonly used in professional photography, containing approximately nineteen (19) small black and white photographs. This sheet of photographs was the same evidence discovered by David Merkey and that used to support the search warrant. The reference to the evidence in the affidavit as a negative rather than a proof sheet was merely an inaccurate description of the evidence. This difference in semantics is the only evidence offered by Appellant to support his theory that the at some

**1332** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

unknown time the State switched the evidence. We find Appellant's claim not supported in the record and dismiss it as meritless.

▮▮▮ Appellant further alleges that the chain of custody as to the videotape was not properly maintained. The record reflects that Deputy Sheriff James Newman seized the videotape from Appellant's home, handed it to John Rizzi to log in to the inventory sheet and the evidence was placed in the custody of Police Chief Coburn and locked in a jail cell. Appellant argues that because John Rizzi is not further identified or examined at trial the chain of custody was broken.

▮▮▮▮ In reviewing the chain of custody, it is not necessary that all possibility of alteration be negated. *Fixico v. State*, 735 P.2d 580, 582 (Okl.Cr.1987). It is sufficient if the State shows that the evidence is in substantially the same condition at trial as when the crime was committed. *Driskell v. State*, 659 P.2d 343, 354 (Okl.Cr.1983). Any doubt as to its preservation until trial goes to the weight of the evidence, not its admissibility. *See Minter v. State*, 756 P.2d 10, 11 (Okl.Cr.1988). Here, Deputy Newman testified that the videotape was played at the Appellant's home before it was seized. That same videotape was played at the preliminary hearing and was before the court at trial. We are satisfied that a sufficient chain of custody as to the videotape was maintained. Therefore, this assignment of error is denied.

▮▮▮ Appellant alleges in his seventh assignment of error that the evidence was insufficient to sustain a guilty verdict on Count I. Appellant initially challenges the evidence presented to support the element of possession. The test for the sufficiency of the evidence is well known: whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985). *See also New v. State*, 760 P.2d 833, 835 (Okl.Cr.1988).

The proof sheet of photographs was found in the attic of the home shared by Appellant and his wife. Evidence was also presented which showed that Appellant actually took the photographs and discussed having the photographs published. This was sufficient evidence of constructive possession of the contraband. *See Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982); *Smith v. State*, 698 P.2d 482, 485 (Okl.Cr. 1985).

▮▮▮ Appellant further challenges the sufficiency of the evidence supporting the charge that the photographs contained on the proof sheet were a lewd exhibition intended for the purpose of sexual stimulation of the viewer. Appellant argues that the photos were "artistic poses not poses in sexually stimulating positions." (Appellant's brief pg. 41) Appellant was charged in Count I of the Amended Information, in part, as follows:

> feloniously and knowingly possessing sexual material. A photograph known, as a "proof sheet" with nineteen (19) smaller photographs on said proof sheet, involving the participation of a minor child, a female, to wit: the age of eleven (11), in exhibition of the uncovered genitals for purpose of sexual stimulation of the viewer. (O.R. 83).

This allegation, set forth in substantially the same language as the final clause of Section 1021.2, prohibits the possession of pictures that have the purpose of sexually stimulating the viewer. In the present case, the photographs revealed the uncovered genitals of the minor, however none of the photos can be reasonably said to focus on that area and none of the child's poses appear to be "unnatural". As depictions of nudity, without more, are constitutionally protected means of expression, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975), we must look to evidence outside the pictures themselves to establish the requisite purpose.

Substantial evidence was introduced which circumstantially established Appel-

lant's purpose in possessing the photos. Appellant sought permission from M.M. to publish the photos in a "magazine that had nude teenagers in it" and that he once kept the pictures secreted in a garage compartment. M.M. testified that Appellant sexually abused her all of her minor life. A videotape depicting several nude minor females, as well as Appellant engaged in various sexual acts with M.M., was discovered in Appellant's possession. On the basis of this evidence, any rational trier of fact could have found beyond a reasonable doubt that Appellant possessed the photos at issue "for the purpose of the sexual stimulation of the viewer".

■ Appellant also alleges that Count II should be dismissed as the evidence was seized in violation of his constitutional right to private possession of obscene material under *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Appellant correctly notes that *Stanley* held that punishment for private possession of material, later found to be obscene, violated the First and Fourteenth Amendments to the United States Constitution.

However, in the recent case of *Osborne v. Ohio*, 495 U.S. ——, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), the United States Supreme Court upheld an Ohio statute prohibiting the personal possession of child pornography. The Court distinguished the case from *Stanley*, as the Ohio law did not rely on paternalistic interests in regulating the viewer's mind, but rather was designed to protect the victim of child pornography. Contrary to the Appellant's argument that *Stanley* is the law as it pertains to "mere" possession of child pornography, *Osborne* indicates that the Supreme Court is not going to retreat from it's determination that child pornography is separate and distinct from obscenity. *See New York v. Ferber*, 458 U.S. 747, 763, 102 S.Ct. 3348, 3357, 73 L.Ed.2d 1113 (1982). Therefore, Appellant's authority does not support his argument. As he does not offer further legal authority or evidence from the record to support his argument, we will not con-sider it further. *See Fuller v. State*, 751 P.2d 766, 768 (Okl.Cr.1988); *Wolfenbarger v. State*, 710 P.2d 114, 116 (Okl.Cr.1985), *cert. denied* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986).

■ Appellant contends in his eighth assignment of error that the trial court erred in permitting the jury to re-hear the testimony of state's witness David Merkey. After the jury had retired for deliberations, a note was sent to the judge asking to hear the testimony of Merkey again. With all parties concerned assembled in the courtroom, including counsel for both the state and the defense and the impaneled jury, the trial judge read the note aloud. It was decided that a tape recording of the testimony could be played for the jury. The recording was then played for the jury, seated in the courtroom, after which they returned to their deliberations.

Relying on 22 O.S.1981, § 894, and *Martin v. State*, 747 P.2d 316 (Okl.Cr.1987), Appellant now argues this was error as the court failed to "determine the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis." (Appellant's Brief, pg. 43)

Title 22 O.S.1981, § 894 provides:

After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

This Court has held that under this statute, the determination of whether or not the jury's request is granted lies within the judicial discretion of the trial court. *Givens v. State*, 705 P.2d 1139, 1141 (Okl.Cr. 1985); *Glaze v. State*, 565 P.2d 710, 714

(Okl.Cr.1977); *Kovash v. State*, 519 P.2d 517, 520 (Okl.Cr.1974). In *Bradley v. State*, 561 P.2d 548 (Okl.Cr.1977), we upheld the trial court's decision to allow the jury to return to the courtroom and listen to a tape recording of a witnesses testimony. We determined that the playback of the tapes came within a fair, reasonable interpretation of Section 894.

Appellant goes one step further and argues that the trial court did not follow the guidelines set forth in *Martin*. In that case, a video player was set up in the jury room and the jury allowed to watch a videotape of the testimony of the child victim. We found there was a difference in having part of the testimony dispassionately read to a jury and allowing the jury to hear and see, the entire testimony of the witness again. We found the possibility of abuse substantially increased with video technology.

Further, we held that under 22 O.S.1981, § 894, the jury must be called back into the courtroom and the trial judge determine the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. If, after a careful exercise of discretion, the court decides to repeat some testimony for the jury, it may do so in the presence of the defendant and all counsel in open court or in other similarly controlled environment.

In the present case, the jury's request was very specific, directed only to the testimony of David Merkey. Therefore, it was not necessary for the judge to make an express determination of the nature of the jury's difficulty and isolate the testimony which would solve it. Further, in deciding to play the tape, which was an audio tape in contrast to the videotape in *Martin*, the court in effect found any prejudice to Appellant was outweighed by the probative value. The requested testimony was not that of the victim, but of the state's witness who discovered the contraband.

Moreover, the record clearly shows that the jury and all parties concerned were called into the courtroom and the tape played under the direction of the judge in the controlled arena of the courtroom. Although factually distinguishable from *Martin*, the present case clearly shows that the guidelines promulgated by this Court were followed and that the trial court did not abuse its discretion in playing the tape of Merkey's testimony for the jury. Accordingly, this assignment of error is denied.

■ In his ninth assignment of error, Appellant alleges the trial court erred in admitting evidence of other crimes. This evidence of other crimes, Appellant contends, was contained in the information of Count II, which alleged that Appellant was involved, with a minor child, "in the act of sexual intercourse, fellatio and cunnilingus." (Appellant's brief, pg. 44)

Appellant was charged pursuant to 21 O.S.1981, § 1021.2, which provides in pertinent part:

Any person who shall procure or cause the participation of any minor under the age of eighteen (18) years in any film, motion picture, videotape, photograph, ... wherein the minor is engaged in or portrayed, depicted or represented as engaging an any act of sexual intercourse, in any act of fellatio or cunnilingus, .... in any other exhibition of the uncovered genitals having the purpose of sexual stimulation of the viewer, or who knowingly possesses, procures, or manufactures, ... any said material involving the participation of any minor under the age of eighteen (18) shall be guilty, upon conviction, of a felony....

The felony information of Count II charged Appellant with "knowingly and feloniously possess sexual material, a video tape, involving the participation of a minor child, a female, to-wit: the age of ten (10), in the act of sexual intercourse, fellatio and cunnilingus with a male adult, said defendant Vestor Shultz" (O.R. 1) Appellant mistakes elements of the offense for elements of other crimes.

Under Section 1021.2, an accused may be charged with possession of sexual material

which portrays a minor involved in any act of sexual intercourse or possession of sexual material which shows a minor in a manner designed to sexually stimulate the viewer. Here, the Appellant was charged with possession of a videotape which showed him involved in the sexual activity with the minor.

■■■ Appellant further alleges error in the playing of the entire videotape for the jury, arguing that it was not relevant to proving possession and that the tape was more prejudicial than probative. As discussed above, Appellant was charged with possession of a videotape in which sexual activity with a minor was portrayed. Therefore, it was relevant for the jury to view the tape. Moreover, Appellant's offer to stipulate that it was him in the videotape did not relieve the State of the burden of proving each element of the offense.

■■■ It was not error for the trial court to play the tape for the jury without first viewing it, as the Appellant contends. The record reflects that the entire videotape was not played until trial. At the preliminary hearing, the tape was played with portions fast forwarded by the judge. The preliminary hearing judge found the evidence sufficient, including that seen on the video, to bind the Appellant over for trial. The trial judge then chose to rely on the findings of the preliminary hearing judge relating to the contents of the tape. Relevancy and materiality are matters within the sound discretion of the trial court absent an abuse thereof. *Behrens v. State*, 699 P.2d 156, 158 (Okl.Cr.1985), *Noah v. State*, 562 P.2d 950 (Okl.Cr.1977). We do not find the trial judge's reliance on the findings of the preliminary hearing judge, combined with the knowledge acquired during the trial, to be an abuse of that discretion. Appellant further alleges that evidence of other crimes was introduced through the opening statement of the prosecutor and his examination of witnesses. These same allegations were raised by Appellant and addressed by this Court in the assignment of error concerning prosecutorial misconduct and will not be discussed further. Contrary to Appellant's arguments, this was not a trial which was permeated with inadmissible evidence of other crimes. Any references to the commission of other crimes was harmless error as the jury was specifically directed not to consider evidence of other crimes. Instruction No. 13A informed the jury that the Appellant was charged with knowingly possessing obscene pictures of minors, and not with any other crime, and that any other crimes are for any other jury at another time. "Your job is to acquit or convict the defendant on either one or two counts of Possession of Obscene Pictures of Minors." (O.R. 95) Accordingly, this assignment of error is denied.

■■■ In his tenth and final assignment of error, Appellant contends that the sentence imposed is disproportionate to the crime committed and constitutes cruel and unusual punishment. Appellant argues that *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), requires us to conduct an extensive proportionality review of his sentence, focusing on the gravity of the offense and harshness of the penalty; the sentence imposed on other criminals in the same jurisdiction; and the sentence imposed for commission of the same crime in other jurisdictions.

In *Maxwell v. State*, 775 P.2d 818 (Okl. Cr.1989), this Court discussed the requirements of *Solem* and found that it required an extensive proportionality analysis only in those cases involving life sentences without the possibility of parole. We further stated:

> Our review of the constitutionality of Appellant's sentence is guided by well established principles. We must grant substantial deference to the legislature's determination of sentencing limits, and we must not substitute our judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Solem v. Helm*, 463 U.S. at 277 and 290 n. 16, [103 S.Ct. at 3001 and 3009 n. 16].

We have consistently expressed these principles by stating that when a sentence is within statutory limits, it will not be modified unless, after a review of all the facts and circumstances, the sentence is so excessive that it shocks the conscience of this Court. *See e.g. Whittmore v. State,* 742 P.2d 1154 (Okl.Cr. 1987); *Berkihiser v. State* 219 P.2d 1020, 92 Okl.Cr. 31 (1950).

775 P.2d at 820.

Here, Appellant received the maximum sentence allowed by statute. When considered in light of all the facts and circumstances of the case, we do not find the sentence so excessive as to shock the conscience of the court. Therefore, the sentence is constitutional and affirmed. Accordingly, this assignment of error is denied.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

JOHNSON, J., concurs.

LANE, P.J., and PARKS, J., concur in result.

BRETT, J., specially concurs.

PARKS, Judge, concurring in results:

In his fifth assignment of error, appellant contends that the trial court erred in failing to give instructions on a lesser included offense. The majority correctly concludes that Section 1024.2 is not a lesser included offense of Section 1021.2, and that the evidence did not warrant a lesser included offense instruction. However, the majority erroneously states that a defendant's failure to object to the instructions given or offer written requested instructions waives any error in the trial court's failure to issue an instruction on a lesser included offense. This Court has held that if a lesser included offense is supported by the evidence, the trial court must give the instructions on that offense whether the defendant requests them or not. *Penny v. State,* 765 P.2d 797 (Okl.Cr.1988). Accordingly, had there been an error in failing to instruct on a lesser included offense in this case, such would not have been waived through appellant's failure to object to the instructions given and submit his own written instructions.

Furthermore, I reiterate my disagreement with the majority of this Court's abandonment of the *Aguilar–Spinelli* standard as it applied to state constitutional attacks upon search warrant affidavits. *See Langham v. State,* 787 P.2d 1279, 1281–82 (Okl.Cr.1990) (Parks, P.J., concurring in result). As a matter of *stare decisis,* however, I am obligated to apply the *Illinois v. Gates* standard to the facts of the present case.

BRETT, Judge, specially concurring:

I agree that appellant's conviction and sentence should be affirmed, however, I would add that as to appellant's fifth assignment of error, where he contends that the trial court should have given instructions on a lesser included offense, that this error is not waived. If a lesser included offense is supported by the evidence, then the trial court must give the instructions on that offense whether the defendant requests them or not. *Penny v. State,* 765 P.2d 797 (Okl.Cr.1988). Nevertheless, I agree with the majority that the evidence in this case did not support a lesser included offense.